UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAH AMANDA E.,<br><br>               Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br><br><br>               Defendant. | NO:  1:18-CV-03173-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 12.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).[2]

ORDER ~ 1

represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is denied and Defendant's Motion, ECF No. 13, is granted.

## JURISDICTION

Plaintiff Sarah Amanda E.[2] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on March 16, 2015, alleging an onset date of April 9, 2009, in both applications.[3] Tr. 274-85. Benefits were denied initially, Tr. 204-10, and upon reconsideration, Tr. 213-17. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 13, 2016. Tr. 75-119. On May 17, 2017, the ALJ issued an unfavorable decision, Tr. 38-58, and on April July 5, 2018, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

///

///

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[3] The alleged onset date was amended to January 1, 2014, at the hearing because there is a prior nondisability decision dated December 31, 2013. Tr. 77, 123-34.

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 33 years old at the time of the hearing. Tr. 79. She has a high school diploma and attended college for one year. Tr. 79-80. She has work experience as a cashier at a convenience store and a grocery store, as a newspaper courier and distribution manager, as a manifester and security guard at a chicken plant, and as a trimmer at a turkey plant. Tr. 81-89.

Plaintiff testified she suffers from schizoaffective disorder and panic disorder with agoraphobia. Tr. 96. If she is around a big crowd she freezes and has a panic attack. Tr. 96. When she has a panic attack, her heart races, she gets short of breath, starts sweating, and has the urge to run away. Tr. 98. She takes anxiety medication which helps for the most part. Tr. 99. Plaintiff testified she has osteoarthritis in her knee and when she stands too long it starts to hurt. Tr. 101. If she does not sit, she will fall. Tr. 101. She has been diagnosed with a vitamin D deficiency and "there is a good chance that I have fibromyalgia." Tr. 104. She has a hard time lifting or moving heavy objects. Tr. 104. She has myalgia and muscle pain which occur if she overworks herself. Tr. 105. She has urinary incontinence. Tr. 105.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

ORDER ~ 3

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

///

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work

ORDER ~ 5

activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. 20 C.F.R.

§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude a

person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 1, 2014, the amended alleged onset date. Tr. 40. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia,

ORDER ~ 7

obesity, osteoarthritis of the right knee, insomnia, schizoaffective disorder – bipolar type, other specified depressive disorder, unspecified anxiety disorder, and borderline personality disorder.  Tr. 40-41.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 41.

The ALJ then found that Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> she cannot climb, she can only occasionally balance and stoop, and she cannot kneel, crouch or crawl.  She is able to perform work where interpersonal contact is incidental to the work performed, where the complexity of tasks is learned and performed by rote with few variables and little judgment required, and where the supervision required is simple, direct and concrete.

Tr. 43.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 51.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform such as paper label assembler, motor polarizer, and type copy examiner.  Tr. 52.  Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of the decision.  Tr. 52.

///

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ made a proper step five finding.

ECF No. 10 at 2.

**DISCUSSION**

**A.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF No. 10 at 9-14. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms less than fully persuasive. Tr. 44-45.

First, the ALJ noted no physician assessed any functional restrictions that would preclude work activity. Tr. 47. It is reasonable for the ALJ to consider the fact that no treating or examining physician has found the claimant disabled. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see also Green v. Heckler*, 803 F.2d 528, 531 (9th Cir. 1986). Without citing any authority, Plaintiff contends that this is not a clear and convincing reason because the record does not contain an opinion regarding Plaintiff's functional capacity from any treating or examining physician. ECF No. 10 at 11. However, "[a] claimant bears the burden of proving that an impairment is disabling." *Id.* (quoting *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir. 1985). The ALJ reasonably considered that no physical restrictions precluding work activity were assessed by any physician.

Second, the ALJ found that medications helped Plaintiff's symptoms significantly. Tr. 47, 50. The type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms as well is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). An impairment effectively controlled with medication is not disabling. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ noted that in March 2013, Plaintiff was doing well on medication. Tr. 48, 692. In August 2013, Plaintiff stopped taking her medications because she thought they were making her nauseous, but she continued to be nauseous after stopping and agreed to restart. Tr. 48, 687. In February 2015, Plaintiff reported her bipolar symptoms were doing well on medication. Tr. 49, 660. In May 2015, Plaintiff was hospitalized for suicidal thoughts, but after a medication adjustment she reported improvement in her mood, had a bright affect, and said she felt "100%." Tr. 49, 668-70. In November 2015, Plaintiff had participated minimally in therapy but was using medication to manage her symptoms. Tr. 49, 796. In April 2016, Plaintiff's bipolar symptoms were stable on medication, and in November 2016, she told Dr. Shry that she was compliant with medications and that they had helped a lot. Tr. 49, 735, 949. Based on the foregoing, the ALJ reasonably found that medication improved Plaintiff's mental health symptoms and this is a clear and convincing reason.

Third, the ALJ observed that Plaintiff worked successfully in her last job and left for reasons unrelated to disability. Tr. 47. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in evaluating her symptom complaints. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff testified she last worked as a cashier in a supermarket and was fired when she was caught taking money out of the till. Tr.92-94. Plaintiff observes that she last worked in 2012 but her alleged onset date is in 2014, and that she testified that

ORDER ~ 12

her physical and mental impairments have worsened since she stopped working. ECF No. 10 at 11 (citing Tr. 97, 102, 287, 302). Defendant notes Plaintiff actually alleged she became disabled on April 9, 2009, implying the reason she stopped working is relevant because the later alleged onset date is only due to the prior nondisability decision. ECF No. 12 at 3-4 (citing Tr. 276, 322-23). Under these circumstances, it was reasonable for the ALJ to consider the reason Plaintiff stopped working. Even if the ALJ should not have considered this reason because of Plaintiff's allegations of increased impairment, any error would be harmless because the ALJ cited other clear and convincing reasons supported by substantial evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Fourth, the ALJ noted an absence of objective medical evidence supporting the degree of limitations alleged. Tr. 47. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ discussed the record and the objective findings in detail, including evidence before the alleged onset date. Tr. 45-50. Plaintiff contends the record "amply supports" her muscle and joint pain caused by fibromyalgia, obesity, and arthritis. ECF No. 10 at 12. However, the ALJ acknowledged Plaintiff has symptoms and included a number of physical and mental limitations in the RFC.

Tr. 43, 47. The ALJ reasonably considered the objective evidence in evaluating Plaintiff's symptom allegations.

Fifth, the ALJ noted an inconsistency in Plaintiff's report regarding her functional abilities. Tr. 47. The ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record. S.S.R. 16-3p. In evaluating a claimant's symptom claims, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ noted that Plaintiff's report indicates it hurts too much to stand for her to prepare meals and that she does no household chores. Tr. 47, 312. However, the ALJ observed that later in the same document, Plaintiff stated she did housework between periods of lying in bed. Tr. 47, 310. Her statement that she is unable to do household chores is also inconsistent with her report in therapy records from November 2014 that she cleans the kitchen several times a day. Tr. 47, 779. This inconsistency between Plaintiff's reported limitations and activities was reasonably considered by the ALJ and is supported by substantial evidence.

Sixth, the ALJ observed that while Plaintiff has had mental health treatment for years, there are also significant gaps in Plaintiff's treatment history. Tr. 50. Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather

ORDER ~ 14

than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14.

The ALJ found that Plaintiff's failure to maintain a consistent treatment pattern for her alleged mental impairments is inconsistent with her allegations of disabling symptoms. Tr. 50. The ALJ observed there was a gap in treatment after she saw Debra Brent, APN, in April 2016, until she saw Ms. Brent again in September 2016. Tr. 46, 732, 944. The ALJ also noted Ms. Brent observed that Plaintiff never pursued a physical therapy referral for back pain. Tr. 46-47, 944. The record reflects other periods of a few months at a time with no treatment (e.g., November 2015 to April 2016, Tr. 735, 796), but the ALJ did not address Plaintiff's assertion that she lacked funds and transportation.[4] ECF No. 10 at 13 (citing Tr. 798). While the ALJ is not incorrect about treatment gaps, the Court concludes that this reason is not sufficiently "clear" or "convincing" to discount

---

[4] Symptom claims are undermined "by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).

Plaintiff's symptom complaints. Nonetheless, the ALJ cited other legally sufficient reasons for doing so and to the extent the ALJ erred, the error is harmless. *See Carmickle*, 533 F.3d at 1162.

**B.      Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of examining psychologist, Steve A. Shry, Ph.D. ECF No. 10 at 14-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th

ORDER ~ 16

Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

Dr. Shry examined Plaintiff in November 2016, conducted a mental diagnostic and psychometric evaluation, and completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form. Tr. 949-56. He diagnosed borderline personality disorder and other specified depressive disorder, recurrent short duration depression. Tr. 951. He found Plaintiff did not have difficulty comprehending and carrying out simple and complex tasks; did not appear to be significantly limited in her ability to cope with the typical demands of basic work-like tasks; did not appear to be impaired in her ability to attend to and concentrate on tasks, although she appeared to be impaired in the ability to sustain persistence when completing complex tasks; and she did not seem to be impaired in her ability to complete work like tasks within acceptable time frames. Tr. 951.

On the medical source statement form, Dr. Shry marked boxes indicating marked limitations in the ability to interact appropriately with supervisors and coworkers, and in the ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 954. He also assessed moderate limitations in three functional areas. Tr. 953-54.

The ALJ gave Dr. Shry's opinion some weight to the extent it is consistent with the opinions of the reviewing psychologist, Jon Etienne Mourot, Ph.D., and

ORDER ~ 17

reviewing psychiatrist, Christal Janssen, Psy.D.. Tr. 51, 150-52, 164-66, 181-83, 196-98. Dr. Shry's assessment of three marked limitations was contradicted by Dr. Mourot's and Dr. Janssen's assessment of no more than moderate limitations and no significant social limitations. Tr. 150-52, 164-66. Thus, the ALJ was required to provide specific and legitimate reasons for rejecting a portion Dr. Shry's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found that there are no objective findings in Dr. Shry's report or in the treatment record from Counseling Associates that support the marked limitations he assessed. Tr. 51. An ALJ may discredit a physician opinion that is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff observes that Dr. Shry conducted a mental status exam and contends that it is objective evidence. Indeed, mental status examinations are objective measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The ALJ noted Dr. Shry's mental status exam findings that Plaintiff seemed pleasant, friendly, and polite; she seemed cooperative and responsive; she demonstrated a normal and stable mood and an expansive range of expression; and her speech was at a normal rate and volume.[5] Tr. 43, 950. None of these findings reasonably support marked limitations in

---

[5] The only abnormal finding in the mental status exam involved thought content. Dr. Shry noted Plaintiff's reported history of paranoid ideation and inpatient treatment for a suicidal threat in the past. Tr. 950.

Plaintiff's ability to interact with supervisors or coworkers or in the ability to respond appropriately in a work setting. Other objective testing by Dr. Shry involved the Wechsler Adult Intelligence Scale-IV (WAIS-IV), which measures intellectual functioning. Tr. 950. Dr. Shry noted that while Plaintiff did not appear to tolerate frustration well,[6] she seemed motivated and demonstrated no unusual behaviors or mannerisms. Tr. 950.

Similarly, treatment notes from Plaintiff's counseling sessions at Counseling Associates provide no objective support for the marked limitations assessed by Dr. Shry. Tr. 778-806. Plaintiff reported numerous symptoms, but mental status exam findings noted that while Plaintiff's mood was variously anxious, depressed, or angry, her demeanor, eye contact, speech, and behavior were average. Tr. 781-82, 791-92, 797-97. The ALJ reasonably concluded that these findings do not support the marked limitations assessed by Dr. Shry regarding interactions with supervisors and coworkers and the ability to respond appropriately in a work setting. Notably, Plaintiff does not identify any specific objective findings contained in Dr. Shry's opinion or in Plaintiff's records from Counseling Associates which support his conclusions. ECF No. 10 at 15-17. Even if the record could be construed

---

[6] It is noted that Dr. Shry stated precisely the opposite on the following page of his report, "[s]he did appear to tolerate frustration well during this evaluation." Tr. 951.

ORDER ~ 19

differently, the ALJ, not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971). Thus, the ALJ's interpretation of the evidence was reasonable and this is a specific, legitimate reasons supported by substantial evidence.

**3.  Step Five**

Plaintiff contends the ALJ's step five finding is insufficient. ECF No. 10 at 17-21. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he or she can do other work. *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. If the claimant can perform jobs which exists in significant numbers either in the region where the claimant lives or in the national economy, the claimant is not disabled. 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(b). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett*, 180 F.3d at 1099.

ORDER ~ 20

The vocational expert testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as paper label assembler (360 jobs in Arkansas and 25,000 jobs in the national economy), motor polarizer (135 jobs in Arkansas and 5,570 jobs in the national economy), and type copy examiner (150 jobs in Arkansas and 12,225 jobs in the national economy).  Tr. 52, 114-15.

Plaintiff contends that 645 jobs, which is the total number of representative jobs available in the State of Arkansas identified by the vocational expert, is insufficient to constitute a significant number of available jobs.   ECF No. 10 at 19. However, courts have found that jobs in Arkansas existing in numbers from 423 to 873 have constituted a "significant number."  *See Lenderman v. Colvin*, No. 3:14-CV-00245, 2015 WL 4988278, at *4 (E.D. Ark. July 29, 2015) (total of 873 jobs in Arkansas including 846 silver wrapper jobs and 27 small products assembly jobs); *Fusher v. Colvin*, No. 2:14-CV-02223, 2015 WL 4038892, at *6 (W.D. Ark. July 2, 2015) (total of 452 jobs in Arkansas including 220 machine tender jobs, 182 assembler jobs, and 50 inspector jobs); *Partain v. Colvin*, No. 4:13CV000168, 2014 WL 5524408, at *5 (E.D. Ark. Oct. 31, 2014) (total of 789 jobs in Arkansas including 368 production assembler jobs, 224 machine tender jobs, and 197 hand packer jobs); *Weaver v. Colvin*, No. 4:12CV00220, 2013 WL 3716512, at *6 (E.D. Ark. July 11, 2013) (total of 423 jobs in Arkansas including 74 surveillance system monitoring jobs, 177 escort vehicle driver jobs, and 172 document preparer jobs); *see also Ferro v. Astrue*, No. 10-2190, 2012 WL 3160357, at *6 (W.D. Ark. Aug.

ORDER ~ 21

3, 2012) (total of 670 jobs in Arkansas, including 70 crossing guard jobs and 600 surveillance systems monitor jobs); the court found that, "[w]hile the number of jobs available as a crossing guard [70] would be problematic the number of jobs available as a surveillance system monitor [600] would certainly meet the test"). Thus, 645 jobs available in the State of Arkansas does not necessarily fall short of a "significant number" of jobs.

Furthermore, the regulations indicate that "work exists in the national economy when it exists in significant numbers *either* in the region where [the individual lives] *or* in several other regions of the country." 20 C.F.R. §§ 404.966(a), 416.966(a) (emphasis added). "If we find *either* of the two numbers 'significant,' then we must uphold the ALJ's decision." *Beltran*, 700 F.3d at 390 (citing 42 U.S.C. § 423(d)(2)(A)). While there is no bright-line rule for determining the number of jobs that qualify as a "significant" or "substantial" number in the national or local economy, the Ninth Circuit has found 25,000 jobs to be a significant number. *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528-29 (9th Cir. 2014). Thus, the 42,795 jobs identified by the vocational expert is a significant number of jobs available in the national economy. Tr. 52, 114-15.

Plaintiff further argues the vocational expert did not provide the correct number of jobs for the occupations identified. ECF No. 10 at 20-21. A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18. Plaintiff cites "Job Browser Pro" to

ORDER ~ 22

challenge the job data contained in the vocational expert's testimony. ECF No. 10 at 20. However, "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). The Court finds no such challenge in the hearing transcript. Tr. 110-16. Thus, this line of argument was waived.

Furthermore, Courts considering similar arguments have found that lay assessment of raw data by looking at Job Browser Pro does not rebut a vocational expert's opinion. E.g., *Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (concluding the ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the data therefrom served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony). Thus, the ALJ properly relied on the vocational expert's testimony.

ORDER ~ 23

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 12, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 30, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge